SYLVESTER P. JAGLA AND JUDITH A. JAGLA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jagla v. Commissioner
Docket No. 25355-86
United States Tax Court
T.C. Memo 1991-300; 1991 Tax Ct. Memo LEXIS 346; 62 T.C.M. (CCH) 63; T.C.M. (RIA) 91300; July 3, 1991, Filed *346 Decision will be entered for respondent. John N. Moore, for the petitioners. James D. Hill, for the respondent. DAWSON, Judge. PETERSON, Chief Special Trial Judge. DAWSON; PETERSON
MEMORANDUM FINDINGS OF FACT AND OPINION This case has been assigned to Chief Special Trial Judge Marvin F. Peterson pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. All section references are to the Internal Revenue Code as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. The Court agrees with and adopts the Chief Special Trial Judge's opinion, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Chief Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Additions to Tax
Section
Section
Section
Section
Year
Deficiency
6653(a)
6653(a)(1)
6653(a)(2)
6659(a)
1978
$ 11,896.92
$ 594.85
$ 3,569.07
1979
1,827.00
91.35
548.10
1981
3,279.00
$ 163.95
*
983.70
1982
3,943.82
197.19
*
*347 After concessions by petitioners, the only issue remaining for decision is whether petitioners are liable for the additions to tax for negligence for the years 1978, 1979, 1981 and 1982. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners resided in Uniontown, Ohio, when the petition in this case was filed. The parties have also stipulated the record in the case of . In Rybak the Court found that investments in the same master recording program present in the instant case were devoid of economic substance and were entered into solely for the income tax benefits. Accordingly, the investments were disregarded for income tax purposes. During 1981, petitioners formed a joint venture to invest in a certain master recording lease, described in detail in The joint venture, through Structured Shelters, Inc. (SSI), leased a master recording entitled "Playhouse Production of Tom Sawyer and Friends" from Oxford Productions Corporation (Oxford) *348 for a period of 8 years. The joint venture also entered into a record distribution agreement with Aim Record Distribution, Inc. (Aim). Petitioners acquired a 39-percent interest in the joint venture. In addition, petitioners, through Jagla Investment Company, invested in SS Associates, a partnership formed with six other individuals who were their friends and coworkers at Forest City Enterprises, a real estate development company. SS Associates also invested in a master recording lease through SSI. The master recordings were primitive, of very poor quality, and clearly substandard to records sold in the customary retail market. Because of their poor quality, it was highly unlikely that there would ever be a market for records produced from the master recordings leased by the joint venture and SS Associates. The lease agreements with Oxford each required an advance rental payment of $ 10,000.00. In addition, the joint venture and SS Associates were required to pay $ 2,000.00 to Aim for each lease under the distribution agreement. Petitioners contributed $ 2,437.50 in cash to the joint venture and signed a note due in June 1982 for an additional $ 2,437.50. Based on their *349 interest in the joint venture, petitioners' share of the investment credit property and investment credit totalled $ 97,500.00 and $ 9,750.00, respectively. Jagla Investment Company contributed $ 5,905.00 to SS Associates and received a 15.86-percent interest in the partnership. SS Associates claimed qualified investment eligible for investment tax credit in the amount of $ 426,500.00. This total is comprised of $ 250,000.00 for a master recording lease entitled "Fascinating Nursery Rhymes," $ 152,000.00 for a computer, and $ 24,500.00 for the contract right to represent SSI as a Chartered Representative. (At the trial and on brief, petitioners failed to present evidence or argument with regard to the computer and contract right. Accordingly, these items will not be considered). Petitioners claimed $ 11,085.00 of the investment credit on their 1981 tax return. The balance of the unused credit was claimed on the 1978 and 1979 tax returns. During the years involved, Sylvester Jagla was the general manager of Forest City Pre-Cast Systems, a subsidiary of Forest City Enterprises, and Judith Jagla was a telephone operator. At the time of their investment in the joint venture and *350 the partnership, petitioners had no background in or knowledge of the record business. Petitioners did not consult with anyone with experience in the record industry to determine the value of the master recording prior to their investment in the joint venture. Petitioners did not review any appraisals of the master recording. Petitioners primarily discussed the investment with their friends and coworkers, Timothy Powers (Powers) and James Prohaska (Prohaska). Powers has a degree in accounting and was employed in the accounting department at Forest City Enterprises until he became vice president of operations. Prohaska is a certified public accountant and has been employed at Forest City Enterprises since 1974, and is vice president of finance. Prohaska became aware of the master recordings from Thomas Graham and informed petitioners of the opportunity to invest in the master recording leases. Neither Powers nor Prohaska had any experience in the record business and primarily relied on the representations of Mr. Graham who was a sales representative of SSI. Although Prohaska reviewed some appraisals of master recordings before petitioners made their investments, he did not *351 review the appraisals of the master recordings acquired by petitioners. Neither petitioners nor any of the partners in SS Associates made any attempt to determine the quality of the master recordings. There was no investigation of Aim or Oxford by Powers or Prohaska or petitioners to determine the experience and standing of these companies in the record business. They did not examine the leases or the distribution agreements concerning the master recordings and accepted all provisions without comment or negotiation. Both SSI and Mr. Graham received commissions for each of the leases entered into by petitioners and SS Associates. Although both Powers and Prohaska testified that certain financial analyses were made with regard to the investment, there are no records to support this testimony. Petitioners also relied on Thomas Graham in making their investment in the master recording leases. Petitioners' decision to invest in the joint venture and SS Associates was based on the promised tax benefits and not on any advice that the investment presented a good business opportunity. OPINION Petitioners have conceded that the investments in the master recording had no economic substance *352 and were made to obtain income tax benefits. They have conceded the adjustments and additions to tax set forth in the notice of deficiency, except they argue that they are not liable for the addition to tax for negligence under section 6653(a). Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Petitioners contend that they are not liable for the addition to tax for negligence because they relied on the advice of Powers, Prohaska, and Mr. Graham. Reasonable reliance on the advice of professionals is sufficient to defeat a finding of negligence. . See . Petitioners have the burden of proof to show that they were not negligent. . Neither Powers nor Prohaska had any known expertise in the record business. Their experience was limited to the development and sale of real estate. We believe they were generally *353 familiar with the tax benefits gained from investments in certain housing projects and other tax-oriented projects. However, in the instant case they made no effort to determine whether the investment in the master recording leases was economically sound other than for the tax benefits. We do not believe two successful businessmen honestly thought it was possible to acquire a master recording lease with an alleged fair value of $ 250,000.00 for $ 12,000.00 in cash. Although Prohaska testified that he relied on the master recording appraisals, we find this difficult to believe. Prohaska did not have an appraisal for the recordings leased by the joint venture or SS Associates until after the investments were made, but was content to rely on appraisals for other recordings. No physical examination of the master records was made by the appraiser and the appraisals were based on the assumptions that records would be manufactured by a qualified manufacturer in high regard in the record industry, and that there would be an effective worldwide record sales distribution system. None of these assumptions were investigated and found to be true by Powers and Prohaska, and, in fact, they *354 did not exist except on paper. We think it is obvious that Powers and Prohaska were not too concerned about the appraisals or whether the records would be successful in the record market because the investments in the master recording leases were sure winners with a 2 to 1 payback based on the investment credit no matter what happened to record sales. As stated above, where a taxpayer reasonably relies on experienced professionals, the addition to tax for negligence will not be imposed. However, in this case petitioners knew that Powers and Prohaska did not have any experience in the record business and knew that they did not make any attempt to verify the legitimacy of the investment. Petitioner Sylvester Jagla's testimony that he went over the master recording investment with Powers and Prohaska and considered both the economic and tax aspects of the investment was vague and unconvincing. No evidence was presented to show any meaningful investigation or financial analysis of the master recording investment. Neither petitioners nor any partner of SS Associates made any attempt to independently verify the background of Oxford or Aim, or to determine the quality of the master *355 recording, or whether there was a bona fide and viable record sales distribution program. Petitioners did not bother to listen to or examine the recording involved. Under these circumstances, we do not believe that petitioners would have invested in an unfamiliar business venture with such a cursory investigation on their part except to obtain the substantial tax benefits involved. To the extent that petitioners' investment in the joint venture and partnership was based on the advice of Powers and Prohaska, it was unreasonable based on their lack of expertise in the master recording business. Also, their general reliance on Mr. Graham was unreasonable because he was employed by SSI, the promoter. See . Accordingly, under the facts of this case, we find that petitioners are liable for the addition to tax for negligence under section 6653(a) for each of the years involved. Decision will be entered for the respondent. Footnotes
*. 50 percent of the statutory interest on $ 3,279.00. ** 50 percent of the statutory interest on $ 3,943.82↩